I'm Robert Roger, and I represent the appellant Thomas Portee. This is one of these types of cases that I think flunks the sting test, and it's a real fact-driven case. of racial animus here is. Could you just help me with that? Sure, Your Honor. The animus comes from the manager, manager Butts. He's the person who drove the entire termination of our client. Yes, but I'm asking, I have no doubt that there was, there may have been some animus. But the question is because the employee was, gives from the evidence some sense of being an argumentative fellow. But I don't, I don't see the evidence that it was racial. I understand, Your Honor. In fact, at the lower court, the court made the determination that the Sprint has articulated a legitimate reason for the termination, that there was a violation of a customer restraint policy. However, Your Honor, this was a, what we contend is a shifting reason for the termination. If you look closely at the email stream that occurred at the time of the termination, and that is in the record at 161, 162, and 163. At that time, Mr. Butts was filtering information to the Human Resources Department in order to get a recommendation for termination. But was the evidence that the decision maker in Dallas had any idea what the race of any of these people were? She didn't, Your Honor. She, in fact, we don't dispute that. Well, then to go back to Judge Schroeder's question, we've read the emails, and where in the emails can we infer that what was animating Mr. Butts was racial animosity towards Mr. Porky? Well, if the animosity comes from Mr. Butts, who did know the race of that client? Well, yes, but there isn't, everyone involved in this case is a minority. Except for the lady in Dallas. Except for the lady in Dallas. Who didn't know the race of anybody else. Except that my client was the only African-American involved. And my client was the only person who suffered a termination, even though a Hispanic person did, who was also involved in the restraint, who was the assistant manager, Mr. Sanchez, was not even reprimanded for his conduct. I think if you focus on what Mr. Butts knew, and that's what's important, that is... But Mr. Butts didn't know, Mr. Butts wasn't there. But Mr. Butts was, Mike was Mr. Porchy's manager. Mr. Butts knew that Mr. Porchy is African-American. He also knew that his assistant manager is not African-American, and he drove the termination... It must have been Sanchez who was the driving force here. He was the one who was there, was the manager of the store. Well, he was, Mr. Sanchez was the assistant manager of the store, Your Honor, and... But he was the manager there. In charge at that time. In charge. What we know, Your Honor, is Mr. Sanchez, through Mr. Butts, filtered an email to Texas describing the incident. And at that time, he described that Mr. Butts, or Mr. Porchy, had been insubordinate, disobeyed an order, and he looked at the video, and there was no evidence of touching, physical touching, physical restraint. At that time, Human Resources said, we're only going to support termination if you can find physical touching. At that point, Mr. Butts, the manager, and the store manager, and the assistant manager, Mr. Sanchez, got together. They claimed to have had a meeting with Mr. Porchy. They sent a new email to Houston, which said that Mr. Porchy has admitted touching the person, which was denied in the evidence. I'm still struggling with the evidence that it was all based on racial prejudice. I mean, you make out a great animus claim that maybe for whatever reason, and I guess that is the question, was it a racial reason, Butts didn't like Porchy and wanted to get rid of him. And so he was prepared to shade the facts in order to get Dallas to countersign. I understand what you're saying. However, Your Honor, what the court says is when you do have shifting reasons, shifting reasons which are supposedly legitimate for a termination decision, that gives rise itself to an inference of discrimination. What's the closest case that you have? Yes, Your Honor. The closest case, Your Honor, is called Radd v. Fairbanks and Payne v. Norwest. And those are both the Ninth Circuit cases. And they stand for the proposition that what? for the termination. And it's conflicted by the person who was terminated. And in that situation, it gives rise to an inference of. So you see this as a conflict? I do, because if you look at what was said, even in Sprint's own information, first the e-mail stream says human resources is only going to support a termination if it was based upon a physical touching. That's the first thing he said. That was in July of 2003. And then April of 2004, Sprint sent a letter to Fair and Pleasant Housing saying the reason that Mr. Porchy was terminated was because he physically touched and restrained the person. And then finally, and also in deposition, I took the deposition of Ms. Dugas, which is in the record as well, and there she also says that she said that she was under the impression from Mr. Butt that Mr. Porchy had grabbed the customer in an aggressive way. And that's why she supported the termination. Now in support of the motion for summary judgment, they articulate a bunch of other reasons, which are different from the original. And one of those is arguably racial? Well, there are different reasons, Your Honor. And when you have different reasons, under the Payne case it says that when the employer is offering their own reasons and they're shifting as to the reasons for termination, there's also the alternate inference, which could be that it is to mask. It's a pretext. Okay. I'm sorry if I didn't make that clear enough for you. Also, one case that has been decided since we briefed this matter, which is in the Ninth Circuit, is a rubber stamp case called Polin v. Cherdoff. And it does, before it was pretty much up in the air what the standard would be, and it does say that subordinate bias is imputed when the bias subordinate influenced, affected, or otherwise was involved in the decision-making process. And here we have the showing that Mr. Butt was involved. The other things we have that show what we believe is racial animus by Butt is the great links that he went to in order to cover up Sanchez's involvement in the situation. Okay. For example, he covered up the videotaping. He was supposed to have the videotape kept. He was supposed to, but which he didn't, which is a violation of company policy because it shows a negative customer. Does the record show who recycled the video? Yeah. It's in the we attached the interrogatories of where they've admitted that the It was recycled. It was recycled, and we also attached the deposition of Mr. Butt where he states that it was recycled. Okay. And we also showed in the record that he admitted not being reprimanded for that situation. I think we understand the decision. Okay. I just want to briefly focus on the other aspect of which I've talked a little bit about, and it was the unequal application of the sprint policies. We've got the situation where we show that Mr. Port, and that also gives rise to racial animus. You argue in your blue brief that Sanchez was involved in the customer's detention. Yes, Your Honor. And so that would be a violation of the same policy. Exact same policy. Right. Okay. So what is that state? What evidence is in the record? Yes, Your Honor. That would be the declaration of Mr. Porti, and I can tell you where that is. Is that the only place where the evidence suggests that Sanchez was involved in the customer's detention? That's the closest to direct evidence that we have. Everything else is inferential, having to do with the videotape, because if you look at the very first email from Mr. Sanchez, Mr. Sanchez describes what he saw in the video, whereas he says that Mr. Porti was at the door. The videotape showed Mr. Porti at the door, holding the door shut. Well, Mr. Sanchez was also at that door, holding the door shut, according to Mr. Porti's declaration. The missing videotape. Sanchez told him not to do it, didn't he? Well, that's what Sanchez says. What Mr. Porti says is Sanchez, after the incident, joked about the incident at the door. He did not reprimand him. He did not send him home. He did not report the incident to his manager until three days later because he was too busy. It was Friday to a Monday, wasn't it? Your Honor, if this is a serious incident in subordination, and also where he's required to immediately inform his manager of a negative occurrence, where he doesn't write it up, doesn't do anything, doesn't report it until Monday because he's too busy, I think the inference is that he was involved. Okay. Okay? Thank you. Good morning, Your Honors. May it please the Court. Paul Sweeney on behalf of Sprint United Management Company. We have given you as much time, as I sometimes say, as we give people arguing the Exxon Valdez, so you don't need to feel that you have to use all the time because the Court is familiar with the briefs. Trust me, Your Honor, I will not use all of my time. Thank you. I have just one question at the outset that kind of troubled me, and it's really the only question that troubles me. To me, the only potential evidence of racial discrimination is Mr. Portease's statement that Sanchez had also detained the customer with him and joked about the incident afterwards, and yet Sanchez wasn't reprimanded or terminated or anything, and Mr. Portease was. So I went through your entire brief to see what you had to say, what was your response, why was it that Mr. Sanchez was treated differently, and you never mention it in your brief. You never even say, no, he wasn't involved in the detention. Well, there may not be anything in the brief to that effect, and the reason why we didn't That does tend to me, and then the missing videotape, it kind of tends to make one a little bit suspicious of your position that you wouldn't say anything about it. Well, I'll respond to both of those points. With respect to the videotape, the videotape was destroyed as a part of the routine policy of every 30 days taking the videotape out, recording over it, on the 60th day getting rid of it. The claim here was not submitted, that is, to DFEH until six months after he was terminated. So the tape was long gone. Well, but the report of the incident had been made, and the policies, as I understand it, required that there be a report made of the incident, and there was a report that was delayed three days with the apology that things had been busy. But the policy said that you were supposed to save those videotapes if there was an incident. Yes. That policy seems to have been violated by probably Sanchez. It probably was. It was probably, I would guess that there are times when it does, because these are busy offices and nobody claims that every policy like that, every administrative policy like that is followed to the T every time. With respect to the issue concerning Mr. Sanchez and why we didn't say anything about him, is that when these retailers develop policies and procedures, they set them out and they have to interpret whether or not those policies are violated. In this particular case, there's no question that Mr. Portee is the individual who instigated this restraint of the customer. What he did is he's the one who got hit. He's the one who ran down the hall. There's a question about whether or not he touched her in the process, but he is the one who clearly stopped her because he personally believed, according to the plaintiff, that she should be arrested. And that is why he did it. Now, he is the only one who says Mr. Sanchez came in there and also stood by the door. It was a small door. Mr. Portee was a big person. The customer was a small woman. So whether or not you believe that is an issue of fact, of course, but certainly there is not sufficient probative evidence that that's what happened. But the question is, if there is conflict, is it a material issue of fact? I don't think it is a material issue of fact. The reason why is because we have two fundamentally different situations. This is not a situation where Mr. Sanchez was hit and he decided that he was going to restrain the customer, and therefore he chased the customer and he stood in front of the door. That's not what happened, and that's what upset management here. They have a specific policy saying that you are not permitted to do that. Now, to the extent that the plaintiff says that he may have come over after the fact and stood there with him is a completely different situation. With respect to the racial animus issue, which is what you asked before, in fact there is no probative evidence to that effect. This is a case where we have backed into a racial discrimination claim. We know that the person who made the recommendation for the termination was a woman in Dallas who didn't know the race of the plaintiff or the customer. And we know from the record that Mr. Butts went to his direct supervisor and said, what should I do in these circumstances? And ultimately the recommendation came back that he followed, that there should be a termination. So understanding that they can't get at racial discrimination that way, what they do is try to back it into Mr. Butts. And they say, well, he had racial animus. Well, there is no evidence in the record to that effect. This is not a situation where you had a number of complaints or any complaints ever made by the plaintiff about higher racial discrimination. This is a situation where the staff is almost all minorities. The witnesses are African American. They are Hispanic. They are Trinidadian Persian. So there is no evidence to support racial animus here. And consequently there is no basis for a claim of race discrimination. Thank you. Thank you. The policy on the videotapes in the record at 169 and 170, the interrogatory responses at 156 and 157. And I think you also have to look at the fact, what Butts was doing after the incident in order to protect Sanchez. For example, in Butts' deposition, he testifies that Butts reported the incident the very next day after the incident. However, when we took Mr. Sanchez's deposition, he said, no, that's not true. I didn't. But where does that get you? Well, what it shows is collusion. It shows you that Sanchez and Butts were involved in trying to cover up Sanchez's involvement in the situation in order to make sure Portia is terminated and he's the only one terminated. I think that at least gives you that inference, a reasonable inference to that effect, as well as the loss of the videotape, as well as Mr. Portia's declaration as to the denials. And also one other thing was the fact that there was a black witness as well who did talk to Mr. Butts after the incident. And Mr. Butts has testified about that. And he also later did an email which was sent after the human resources person made the recommendation to go ahead and terminate if he had physically touched the customer. And in that email, he very specifically says that Mr. Portia did not act aggressively towards the witness. That was Mr. Jerome who said that? That was Mr. Jerome. So, in other words, this is one of those cases where we're only required to produce very little evidence once we've established a prima facie case. I think we've showed enough based on the declarations, the evidence that does not pass the stink test, and the shifting reasons. And that should be enough to let Mr. Portia have his day in court. Thank you. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for today. The Court stands adjourned.
judges: Schroeder, Wardlaw, Tallman